UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD HERSHEY,

                    Plaintiff,

   - against -

MATTHEW GOLDSTEIN, Chancellor and Chief
Executive Officer of the City University of New York;
RICARDO R. FERNANDEZ, President of Lehman
College; DOMENICK A. LAPERUTA, Lehman
College Director of Public Safety; VINCENT
ZUCCHETTO, Executive Assistant to the Vice
President for Student Affairs at Lehman College;
ESDRAS TULIER, Special Counsel to the President of
Lehman College; EDWIN FREYTES, Shield No. 470;
CUNY PUBLIC SAFETY OFFICER IRIZARIZ, Shield
No. 353; CUNY PUBLIC SAFETY SERGEANT
GALLAN, Shield No. 209; CUNY PUBLIC SAFETY
LIEUTENANT CRUZ, Shield No. 120; JOHN DOES;
AND RICHARD ROES,

                 Defendants.

12 Civ. 3853 (PAE)

**ORIGINAL FILED BY
E.C.F.**

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for Defendants*
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

WILLIAM J. TAYLOR, JR.
Assistant Attorney General
   *Of Counsel*

Reproduced on Recycled Paper

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF ALLEGED FACTS.................................................................................... 3
The Parties .............................................................................................................................. 3
The Alleged Incident.............................................................................................................. 4
The Present Action................................................................................................................. 7

ARGUMENT ............................................................................................................................ 7

POINT I   -  HERSHEY HAS FAILED TO STATE A CLAIM UNDER
            THE FIRST AMENDMENT.................................................................... 8

A.   Hershey Has Failed To State a First Amendment Claim
     as to His Leafleting Inside the Gates of Lehman College ..................................... 9

     1.  Lehman College Is A Limited Public Forum.................................................... 9
     2.  Defendants' Alleged Restrictions on Hershey's Speech Are Constitutional.................. 12

B.   Hershey Has Failed To State a First Amendment Claim
     as to His Leafleting Outside the Gates of Lehman College.................................... 15

POINT II   -  HERSHEY HAS FAILED TO STATE A CLAIM FOR FALSE ARREST .......... 17

POINT III  -  HERSHEY HAS FAILED TO STATE A CLAIM FOR
             MALICIOUS PROSECUTION OR ABUSE OF PROCESS................................ 19

POINT IV   -  HERSHEY HAS FAILED TO STATE A CLAIM FOR
             EXCESSIVE FORCE OR ASSAULT AND BATTERY .................................... 21

POINT V   -  HERSHEY'S REMAINING CLAIMS ALSO FAIL ........................................... 22

POINT VI   -  HERSHEY'S CLAIMS AGAINST SEVERAL OF THE DEFENDANTS
             FAIL FOR LACK OF THE REQUISTE PERSONAL INVOLVEMENT .......... 23

POINT VII  -  HERSHEY'S CLAIMS ARE ALSO BARRED ON QUALIFIED
             IMMUNITY GROUNDS ......................................................................... 24

CONCLUSION........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*5 Borough Pawn, LLC* v. *City of New York*,
    640 F. Supp. 2d 268 (S.D.N.Y. 2009)....................................................................24

*Abdul-Rahman* v. *City of New York*,
    No. 10 Civ. 2778, 2012 WL 1077762 (E.D.N.Y. Mar. 30, 2012) ...........................19

*ACLU* v. *Mote*,
    423 F.3d 438 (4th Cir. 2005) ..................................................................................13

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009).............................................................................................7, 23

*Bloedorn* v. *Grube*,
    631 F.3d 1218 (11th Cir. 2011) ................................................................. 10-11, 14

*Bourgault* v. *Yudof*,
    316 F. Supp. 2d 411 (N.D. Tex. 2004), *aff'd*, 157 F. App'x 700 (5th Cir. 2005)....................10

*Bowman* v. *White*,
    444 F.3d 967 (8th Cir. 2006) ..................................................................................13

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund* v. *Transocean Ltd.*,
    --- F. Supp. 2d ----, 2012 WL 1080366 (S.D.N.Y. Mar. 30, 2012) ...........................7

*Byrne* v. *Rutledge*,
    623 F.3d 46 (2d Cir. 2010)........................................................................................9

*Chambers* v. *Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)......................................................................................3

*Christian Legal Soc'y* v. *Martinez*,
    130 S. Ct. 2971 (2010).............................................................................................13

*Colon* v. *Coughlin*,
    53 F.3d 865 (2d Cir. 1995)......................................................................................23

*Cornelius* v. *NAACP Legal Def. & Educ. Fund, Inc.*,
    473 U.S. 788 (1985).......................................................................................8, 13, 14

*Davis* v. *Mount Vernon Police Dep't*,
    No. 11 Civ. 2991(ALC)(JCF), 2012 WL 1632794 (S.D.N.Y. May 8, 2012) ................... 20-21

*Davis* v. *Stratton*,
   360 F. App'x 182 (2d Cir. 2010) ........................................................................10

*Diggs* v. *Marikah*,
   No. 11 Civ. 6382(PAE), 2012 WL 934523 (S.D.N.Y. Mar. 20, 2012) ...................24

*Dotson* v. *Farrugia*,
   No. 11 Civ. 1126(PAE), 2012 WL 996997 (S.D.N.Y. Mar. 26, 2012) ......................... *passim*

*Garcia* v. *Bloomberg*,
   --- F. Supp. 2d ----, 2012 WL 2045756 (S.D.N.Y. June 7, 2012).....................3, 7-8

*Gilles* v. *Blanchard*,
   477 F.3d 466 (7th Cir. 2007) .....................................................................14-15

*Gilles* v. *Garland*,
   281 F. App'x 501 (6th Cir. 2008) ...............................................................10-12

*Gordon* v. *City of New York*,
   No. 10-CV-5148, 2012 WL 1068023 (E.D.N.Y. Mar. 29, 2012)............................20

*Green* v. *Niles*,
   No. 11 Civ. 1349(PAE), 2012 WL 987473 (S.D.N.Y. Mar. 23, 2012) ...................23

*Hirschfeld* v. *Spanakos*,
   909 F. Supp. 174 (S.D.N.Y. 1995)....................................................................24

*Hotel Emps. & Rest. Emps. Union, Local 100* v. *N.Y.C. Dep't of Parks & Rec.*,
   311 F.3d 534 (2d Cir. 2002)....................................................................... *passim*

*Int'l Action Ctr.* v. *City of New York*,
   587 F.3d 521 (2d Cir. 2009).....................................................................16, 17

*Israel* v. *Abate*,
   949 F. Supp. 1035 (S.D.N.Y. 1996)....................................................................25

*Jones* v. *Parmley*,
   465 F.3d 46 (2d Cir. 2006)................................................................................24

*LaDoucier* v. *City of New York*,
   No. 10 Civ. 05089(RJH), 2011 WL 2206735 (S.D.N.Y. June 6, 2011) .............19-20

*Lawrence* v. *City Cadillac*,
   No. 10 Civ. 3324(PKC), 2010 WL 5174209 (S.D.N.Y. Dec. 9, 2010) ...................25

*Lynch ex rel. Lynch* v. *City of Mount Vernon*,
   567 F. Supp. 2d 459 (S.D.N.Y. 2008)..................................................................21

*Madsen* v. *Women's Health Ctr.*,
    512 U.S. 753 (1994)............................................................................................16

*Make the Rd. by Walking, Inc.* v. *Turner*,
    378 F.3d 133 (2d Cir. 2004)........................................................................10, 11

*Marcavage* v. *City of Chicago*,
    659 F.3d 626 (7th Cir. 2011) .................................................................... 16-17

*McGlone* v. *Cheek*,
    No. 3:11-cv-405, 2012 WL 523659 (E.D. Tenn. Feb. 15, 2012).....................10, 14

*Morgan* v. *Cnty. of Nassau*,
    720 F. Supp. 2d 229 (E.D.N.Y. 2010) ...........................................................23

*People for the Ethical Treatment of Animals* v. *Giuliani*,
    105 F. Supp. 2d 294 (S.D.N.Y. 2000), *aff'd*, 15 F. App'x 35 (2d Cir. 2001).........22

*People* v. *Barton*,
    8 N.Y.3d 70 (2006) ...................................................................................22

*People* v. *Hedemann*,
    107 Misc. 2d 241 (Sup. Ct. App. Term 1st Dep't 1981).................................19

*People* v. *Reape*,
    22 Misc. 3d 615 (N.Y.C. Crim. Ct. 2008) .....................................................19

*Perry Educ. Ass'n* v. *Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983)....................................................................................13

*R.O. ex rel. Ochshorn* v. *Ithaca City Sch. Dist.*,
    645 F.3d 533 (2d Cir.), *cert. denied*, 132 S. Ct. 422 (2011) ......................... 9-13

*Reichle* v. *Howards*,
    132 S. Ct. 2088 (2012) .......................................................................... 24-25

*Reynolds* v. *Barrett*,
    --- F.3d ----, 2012 WL 2819351 (2d Cir. July 11, 2012) ...............................23

*Rodriguez* v. *City of New York*,
    No. 10 Civ. 4404(PAE), 2012 WL 234380 (S.D.N.Y. Jan. 24, 2012)...............3, 19

*Rohman* v. *N.Y.C. Transit Auth.*,
    215 F.3d 208 (2d Cir. 2000)........................................................................20

*Rosendale* v. *Mahoney*,
    369 F. App'x 313 (2d Cir. 2010) .................................................................24

*Sanchez* v. *Port Auth. of N.Y. & N.J.*,
    No. 08-CV-1028, 2012 WL 1068078 (E.D.N.Y. Mar. 29, 2012)............................................25

*Scott* v. *Harris*,
    550 U.S. 372 (2007)...............................................................................................................8

*Sforza* v. *City of New York*,
    No. 07 Civ. 6122(DLC), 2009 WL 857496 (S.D.N.Y. Mar. 31, 2009)...................................19

*Spear* v. *Hugles*,
    No. 08 Civ. 4026(SAS), 2009 WL 2176725 (S.D.N.Y. July 20, 2009) ..................................23

*Sullivan* v. *City of New York*,
    No. 10 Civ. 0038(NRB), 2011 WL 3806006 (S.D.N.Y. Aug. 29, 2011) ..........................21-22

*TADCO Constr. Corp.* v. *Dormitory Auth.*,
    700 F. Supp. 2d 253 (E.D.N.Y. 2010) ..................................................................................21

*Ward* v. *Rock Against Racism*,
    491 U.S. 781 (1989)...............................................................................................................16

*Widmar* v. *Vincent*,
    454 U.S. 263 (1981).........................................................................................................10, 13

*Zalaski* v. *City of Hartford*,
    838 F. Supp. 2d 13 (D. Conn. 2012)..........................................................................16-17, 25

### STATUTES

N.Y. Crim. Proc. Law
    § 2.10(79)...............................................................................................................................16
    § 2.20.....................................................................................................................................16

N.Y. Educ. Law
    § 6206(16)..............................................................................................................................16

N.Y. Penal Law
    § 140.00.................................................................................................................................18
    § 140.05.................................................................................................................................18

Defendants Matthew Goldstein, Chancellor and Chief Executive Officer of the City University of New York ("Goldstein"); Ricardo R. Fernandez, President of Lehman College ("Fernandez"); Domenick A. Laperuta, Lehman College Director of Public Safety ("Laperuta"); Vincent Zucchetto, Executive Assistant to the Vice President for Student Affairs at Lehman College ("Zucchetto"); Esdras Tulier, Special Counsel to the President of Lehman College ("Tulier"); Edwin Freytes, Shield No. 470 ("Freytes"); CUNY Public Safety Officer Irizariz, Shield No. 353 ("Irizariz"); CUNY Public Safety Sergeant Gallan; and CUNY Public Safety Lieutenant Cruz, Shield No. 120 ("Cruz") respectfully submit this memorandum of law in support of their motion, brought pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint in this action, dated May 15, 2012, (the "Complaint" or "Cplt."), and each and every cause of action and request for relief asserted therein in their entirety, with prejudice.[1]

## PRELIMINARY STATEMENT

Plaintiff Richard Hershey ("Hershey"), a vegan activist, brings this action under 42 U.S.C. § 1983 and New York state law, alleging that his First Amendment right to distribute leaflets was violated when he was forced to leave the campus of Lehman College and then was allegedly arrested, forcibly handcuffed, and issued a summons charging him with trespass when he began distributing the leaflets on "a public New York City sidewalk."

Based on these alleged facts, Hershey asserts in the Complaint numerous causes of action against defendants, including claims under both the First and Fourth Amendments and New York state tort law. None of Hershey's claims has any merit, and each should now be dismissed by the Court as a matter of law under Fed. R. Civ. P. 12(b)(6), for several reasons:

---

[1] Defendants John Does and Richard Roes have not been identified by plaintiff, and have not been served in this action. For the reasons discussed below, the claims against these defendants should also be dismissed.

*First*, Hershey's claims under the First Amendment should be dismissed because, under the allegations in the Complaint, Lehman College is, at most, a "limited public forum" reserved for "members of the [Lehman] College community" (Cplt. ¶ 85); accordingly, the alleged restrictions on the speech of an outsider like Hershey within that limited forum fully comport with the requirements of the First Amendment.  Moreover, with respect to Hershey's leafleting outside the gates of Lehman College, the video evidence that this Court may properly consider on this motion to dismiss reveals that the defendants' restriction on Hershey's leafleting was a reasonable, content-neutral time, place, or manner restriction.  *See infra* pp. 8-17.

*Second*, because this same video evidence demonstrates that the defendant officers had probable cause to arrest Hershey for trespass, his claims for false arrest, under both federal and state law, are also barred.  *See infra* pp. 17-19.

*Third*, Hershey's claims for malicious prosecution and abuse of process, under both § 1983 and New York law, fail on probable cause grounds, as well as for other independent reasons.  *See infra* pp. 19-21.

*Fourth*, Hershey's § 1983 claim for excessive force and New York state law claim for assault and battery, both based on allegations of "excessively tight" handcuffing, should be dismissed because he has failed to allege sufficient injury.  *See infra* pp. 21-22.

*Fifth*, the claims for negligence and state constitutional tort also fail as a matter of law. *See infra* p. 22.

*Sixth*, and in any event, Hershey's claims against several of the defendants, including Goldstein, Fernandez, Laperuta, Tulier, and Zucchetto, should be dismissed for failure to allege the necessary personal involvement of each defendant.  *See infra* pp. 23-24.

**Finally**, even if the Court were to find that Hershey adequately alleged his claims, dismissal is warranted on qualified immunity grounds. *See infra* pp. 24-25.

For all these reasons, discussed in detail below, the Complaint should be dismissed in its entirety.

## STATEMENT OF ALLEGED FACTS

This statement is based on the allegations in the Complaint (a copy of which is attached as Exhibit A to the Declaration of William J. Taylor, Jr. ("Taylor Decl.")), which we take as true solely for the purposes of this motion. It is also based, where indicated below, on a video recording of the alleged incident obtained from Lehman College security cameras (a copy of this video is attached as Exhibits B-1 to B-4 to the Taylor Decl.) -- which, because it is both "integral to the complaint" and "incorporated in it by reference," may properly be considered by the Court on this motion to dismiss. *See, e.g.*, *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also Rodriguez* v. *City of New York*, No. 10 Civ. 4404(PAE), 2012 WL 234380, at *2 (S.D.N.Y. Jan. 24, 2012) (noting this standard).[2]

**The Parties**

Plaintiff Hershey, a resident of St. Louis, Missouri, is a vegetarian advocate affiliated with the non-profit organization Vegan Outreach. (Cplt. ¶¶ 5, 13-15, 49, 89.)

Defendant Goldstein is the Chancellor of the City University of New York ("CUNY"). (*Id.* ¶ 6.) Defendant Fernandez is the President of Lehman College, a senior liberal arts college within CUNY, located in the Bronx, New York. (*Id.* ¶¶ 7, 13.) Defendant Laperuta is Lehman

---

[2] Under similar circumstances, Judge Rakoff recently considered police surveillance video in resolving a Rule 12(b)(6) motion to dismiss in a § 1983 case that, like this one, involved both First Amendment and false arrest claims. *Garcia* v. *Bloomberg*, --- F. Supp. 2d ----, 2012 WL 2045756, at *2 & n.1 (S.D.N.Y. June 7, 2012). Here, where Hershey repeatedly refers in the Complaint to these "video surveillance tapes" (Cplt. ¶¶ 63, 77-78) and has a copy of this video in his possession (*see* Taylor Decl. ¶ 3), consideration of video evidence at the motion-to-dismiss stage is similarly appropriate.

College's Director of Public Safety.  (*Id.* ¶ 8.)  Defendant Zucchetto is the Executive Assistant to the Vice President for Student Affairs at Lehman College.  (*Id.* ¶ 9.)  Defendant Tulier is an in-house attorney at Lehman College with the title of Special Counsel to the President.  (*Id.* ¶ 10.) Defendants Freytes, Irizariz, Gallan, and Cruz are CUNY public safety officers stationed at Lehman College.  (*Id.* ¶ 11.)

**<u>The Alleged Incident</u>**

On May 16, 2011, Hershey entered the campus of Lehman College and began handing out "free, non-commercial, educational booklets on behalf of a non-profit organization named Vegan Outreach" on the main public walkway of the Lehman campus.  (*Id.* ¶¶ 13, 16; Ex. B-1.) After leafleting for a brief time, Hershey was approached by defendant Freytes, a CUNY public safety officer, who informed Hershey that he needed permission from the administration to hand out materials on campus and, at Hershey's request, escorted him to the office of defendant Zucchetto, the Executive Assistant to Lehman College's Vice President for Student Affairs. (Cplt. ¶¶ 17-19; Ex. B-1 at 10:38:15-10:39:47.)

Defendant Zucchetto confirmed to Hershey that he was not allowed to leaflet on the Lehman College campus, because, with respect to an outsider like Hershey, the campus grounds were "private property."  (Cplt. ¶ 20.)  Hershey requested "a copy of the College's policy regarding literature distribution on campus," and Zucchetto informed him that such a request would have to be made in writing and would not be responded to that day.  (*Id.* ¶¶ 21-24.)  In accordance with his prior command, Freytes then ordered Hershey to leave the Lehman College campus.  (*Id.* ¶ 25.)  Before he left the grounds, both Zucchetto and Freytes clarified for Hershey that he "had permission to hand out his booklets on the sidewalk outside any of the college's gates, where the students were coming in and out of campus."  (*Id.* ¶ 27.)

After Freytes escorted him outside the Lehman campus gates (*see* Ex. B-2), Hershey alleges he "proceeded to peaceably hand out the booklets to interested student passersby *on the sidewalk* at the intersection of Paul and Bedford Park," and limited his leafleting to that "public New York City sidewalk." (Cplt. ¶¶ 28-35 (emphasis added).)  But the video evidence (which controls here, *see infra* pp. 7-8) reveals that Hershey did not restrict his leafleting to the "public sidewalk," but instead repeatedly moved off of the sidewalk and into and in front of the active driveway "at the intersection of Paul and Bedford Park," which cars and other vehicles use to enter the College.  (Ex. B-3.)

To address this situation, defendant Irizariz, another CUNY public safety officer, approached Hershey, told him he was not allowed to leaflet where he was, and pointed him toward the public sidewalk immediately adjacent to the driveway, where Zucchetto and Freytes had previously informed Hershey he was permitted to leaflet.  (Ex. B-3 at 11:07:57-11:08:48; Cplt. ¶ 31.)  Hershey alleges that he responded to Irizariz that "he was within his rights to leaflet on that public sidewalk."  (Cplt. ¶ 32.)

After Hershey continued to leaflet in the active driveway for several more minutes, another CUNY officer (apparently defendant Cruz, a CUNY public safety lieutenant, *id.* ¶ 34-35) approached him, like Irizariz, pointed him to the adjacent sidewalk, and told Hershey that "if he did not leave" where he was leafleting "that he would be arrested."  (Ex. B-3 at 11:13:58-11:14:32; Cplt. ¶ 34.)  When Hershey still refused to comply with these directives, defendants Freytes, Irizariz, Gallan, and Cruz approached and arrested him.  (Ex. B-3 at 11:15:14-11:17:46; Cplt. ¶¶ 33-38.)

"One of either" Freytes or Irizariz then handcuffed Hershey, and he was taken to the Lehman College public safety office.  (Cplt. ¶¶ 39-40.)  Hershey was held in the public safety

office, in handcuffs, for approximately one hour, while the defendant officers confirmed that he

had no outstanding warrants. (*Id.* ¶¶ 56-57.) After they received this confirmation, Hershey was

issued a formal summons by Freytes charging him with trespass, in violation of § 140.05 of the

New York Penal Law. (*Id.* ¶¶ 57-58.)[3] At this time, Hershey "cautioned the officers in the

public safety office not to destroy any video surveillance tapes, because they will be needed for

use in court." (*Id.* ¶ 63; *see id.* ¶ 77.) Hershey was then released from his handcuffs and, once

again, escorted off the Lehman College campus. (*Id.* ¶¶ 59, 64.)

Hershey continued to leaflet for a period of time outside of the Lehman College campus

gates. (Ex. B-4; Cplt. ¶¶ 65-71.) But after his arrest -- and after he consulted with an NYPD

officer whom he called to the scene -- Hershey restricted his leafleting to the sidewalk itself and

largely ceased crossing in front of the active driveway. (Ex. B-4 at 12:41:26-12:51:59; Cplt. ¶¶

65-71.) From this point forward, Hershey, now adhering to the defendant officers' directives,

distributed his leaflets "without further interference from the public safety officers." (Ex. B-4;

Cplt. ¶ 68.)

Subsequently, on June 13, 2011, defendant Tulier reaffirmed to Hershey, upon his

request, Lehman College's "long-standing practice of prohibiting distribution of flyers, within

College property, by persons who are not members of the College community." (Cplt. ¶ 85.)

Tulier further noted, as Hershey was also informed at the time of his leafleting on May 16, that

"if someone, not connected with the College, wishes to distribute flyers on campus, he/she will

directed to do so outside the College property line." (*Id.*)

---

[3] Hershey alleges that when, on July 21, 2011, he appeared at Criminal Court with respect to this trespass charge, he
was given a document by the Court Clerk stating that "[a]s of the above referenced date [July 21, 2011] the NYPD
has failed to file a legally acceptable accusatory instrument with this court" and that "[t]here is no need for you to
return to court on the summons referenced above." (Cplt. ¶ 92.)

**The Present Action**

On May 15, 2012, Hershey commenced the present action in this Court.  While the Complaint is not entirely clear in this regard, it appears that Hershey alleges the following causes of actions against all defendants: (i) a § 1983 claim alleging violation of his First Amendment rights; (ii) § 1983 and New York state law claims for false arrest; (iii) § 1983 and New York state law claims for malicious prosecution; (iv) § 1983 and New York state law claims for abuse of process; (v) a § 1983 claim for excessive force and a New York state law claim for assault and battery; (vi) a New York state law claim for negligence; and (vii) a New York state constitutional tort claim.  He seeks both monetary and injunctive relief.

Defendants now move to dismiss for the reasons discussed below.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of the cause of action will not do.'"  *Id.*  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*

Moreover, where, as here, the Court properly considers a document outside the pleadings -- *i.e.*, the Lehman College security video of the alleged incident -- on a Rule 12(b)(6) motion, "the document, not the allegations, controls, and the court need not accept the allegations in the complaint as true" if they are contradicted by that document.  *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund* v. *Transocean Ltd.*, --- F. Supp. 2d ----, 2012 WL 1080366, at *10 (S.D.N.Y. Mar. 30, 2012); *see also Garcia*, 2012 WL 2045756, at *10 (relying on video

evidence on a Rule 12(b)(6) motion where "the videos themselves rebut plaintiffs' allegations"); *cf. Scott* v. *Harris*, 550 U.S. 372, 380 (2007) (relying on video evidence in resolving a summary judgment motion raising qualified immunity issues where the video "quite clearly contradicts" the non-movants version of events).

Under these governing standards, as we discuss below, the Court should dismiss Hershey's Complaint, in its entirety, with prejudice.

## POINT I
## HERSHEY HAS FAILED TO STATE A CLAIM UNDER THE FIRST AMENDMENT

To determine whether Hershey has stated a § 1983 claim for violation of his First Amendment rights, the Court must consider, under the legal standards appropriate on a motion to dismiss, three questions: (1) whether the activity at issue is protected speech under the First Amendment; (2) what type of forum is at issue and, therefore, what level of constitutional scrutiny applies; and (3) whether the restriction on speech in question satisfies the constitutional scrutiny appropriate for the forum. *See, e.g.*, *Hotel Emps. & Rest. Emps. Union, Local 100* v. *N.Y.C. Dep't of Parks & Rec.*, 311 F.3d 534, 544 (2d Cir. 2002); *see also Cornelius* v. *NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985) (setting forth this three-part analysis).

Here, there is no dispute on this motion that Hershey's alleged leafleting activity is, as a general matter, a form of speech protected under the First Amendment. Thus -- as to both Hershey's leafleting inside the gates of Lehman College and his leafleting outside the gates -- two questions remain: (i) what type of forum is alleged, and (ii) under the allegations and incorporated video, do the restrictions on Hershey's speech at issue satisfy the appropriate forum-based constitutional standard.

As discussed below, under the allegations in the Complaint, Lehman College is, at most, a "limited public forum" reserved for "members of the [Lehman] College community" (Cplt. ¶

85), and thus defendants' alleged restrictions on the speech of an outsider like Hershey within

that limited forum fully comport with the requirements of the First Amendment.  And, even

assuming the driveway just outside the gates of Lehman College is a "traditional public forum,"

defendants' restriction on Hershey's leafleting, as revealed by the surveillance video, to the

sidewalk immediately adjacent to this driveway was a reasonable, content-neutral time, place, or

manner restriction -- and thus it, too, passes First Amendment scrutiny.  Dismissal of Hershey's

First Amendment claims is thus appropriate under Rule 12(b)(6).

> **A.    Hershey Has Failed To State a First Amendment Claim
> as to His Leafleting Inside the Gates of Lehman College**

> **1.    Lehman College Is A Limited Public Forum**

"It is well established that 'the government need not permit all forms of speech on

property that it owns and controls.'"  *Byrne* v. *Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010) (quoting

*Int'l Soc'y for Krishna Consciousness* v. *Lee*, 505 U.S. 672, 678 (1992)); *see also Hotel Emps.*,

311 F.3d at 544 ("As a general matter, the government is permitted to exercise control over the

public's use of government-owned property for expressive purposes, and the degree of control

permitted depends upon the nature of the property and the speech restrictions imposed

thereon.").  "Instead, under the prevailing constitutional framework, speech restrictions are

analyzed under a 'forum-based' approach," in which the "[t]he level of scrutiny applied to a

restriction on speech depends on the nature of the forum."  *Byrne*, 623 F.3d at 53; *R.O. ex rel.*

*Ochshorn* v. *Ithaca City Sch. Dist.*, 645 F.3d 533, 539 (2d Cir.), *cert. denied*, 132 S. Ct. 422

(2011).

As the Second Circuit recently held, these "[f]ora for expression are classified into four

categories, which fall along a spectrum extending from those deserving the greatest

constitutional protection to those deserving the least constitutional protection: (1) the traditional

public forum; (2) the designated public forum; (3) the limited public forum; and (4) the non-public forum." *Ochshorn*, 645 F.3d at 539.

As relevant here, "[a] limited public forum is created when the state 'opens a non-public forum but *limits* the expressive activity to certain kinds of speakers or to the discussion of certain subjects.'" *Ochshorn*, 645 F.3d at 539 (quoting *Hotel Emps.*, 311 F.3d at 545) (emphasis by *Oschorn* court). That is precisely the situation in this case.

As an initial matter, nowhere does Hershey allege that Lehman College -- or, in particular, the "main public walkway of the Lehman College Campus" where he was initially leafleting (Cplt. ¶ 16) -- is a "traditional public forum" like the "streets and parks which have been immemorially held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Make the Rd. by Walking, Inc.* v. *Turner*, 378 F.3d 133, 142 (2d Cir. 2004) (internal quotation marks omitted).

Nor could he, for, as the Supreme Court made clear more than thirty years ago, college campuses "differ[] in significant respects from public forums such as streets or parks or even municipal theaters." *Widmar* v. *Vincent*, 454 U.S. 263, 267 n.5 (1981). Indeed, following *Widmar*, "no court has found a university's campus to be a traditional public forum." *Bourgault* v. *Yudof*, 316 F. Supp. 2d 411, 419 (N.D. Tex. 2004), *aff'd*, 157 F. App'x 700 (5th Cir. 2005); *see Davis* v. *Stratton*, 360 F. App'x 182, 184 (2d Cir. 2010) ("a campus is not the village green"); *accord McGlone* v. *Cheek*, No. 3:11-cv-405, 2012 WL 523659, at *8 (E.D. Tenn. Feb. 15, 2012); *see also, e.g.*, *Bloedorn* v. *Grube*, 631 F.3d 1218, 1232 (11th Cir. 2011) ("a state-funded university is not a traditional public forum"); *Gilles* v. *Garland*, 281 F. App'x 501, 510-

11 (6th Cir. 2008) (joining Seventh and Eighth Circuits in "reject[ing] the notion that open areas on a public university campus are traditional public fora").

Hershey also does not allege that Lehman College or its "main public walkway" was "intentionally 'opened for *all types* of expressive activity.'"  *Ochshorn*, 645 F.3d at 540 (quoting *Hotel Emps.*, 311 F.3d at 545) (emphasis in *Ochshorn*).  Thus, under settled precedent, it cannot be a "designated public forum" either.  *See id.*; *see also Make the Rd.*, 378 F.3d at 143 ("The government does not create a [designated] public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional public forum for public discourse." (quoting *Ark. Educ. Television Comm'n* v. *Forbes*, 523 U.S. 666, 677) (modification in *Ark. Educ. Television Comm'n*)).

To the contrary, what Hershey alleges in the Complaint is that he was informed by defendant Zucchetto at that time of his leafleting that Lehman College was not public space and thus that "he was not allowed to leaflet on the Lehman College campus."  (Cplt. ¶ 20.) Subsequently, defendant Tulier confirmed to Hershey by e-mail that Lehman College was not an open forum for First Amendment activities for members of the public not associated with the College, and specifically advised him that:

> Lehman College has a long-standing practice of prohibiting distribution of flyers, within College property, by persons who are not members of the College community.  Further, if someone, not connected with the College, wishes to distribute flyers on campus, he/she will be directed to do so outside the College property line.

*(Id.* ¶ 85.)

As noted above, this is precisely the definition of a "limited public forum," *Ochshorn*, 645 F.3d at 539 -- in this case, one reserved for "members of the [Lehman] College community." That this "long-standing practice" of Lehman is "not in the form of a written policy" (Cplt. ¶¶ 85-87) does not change the analysis.  *See, e.g.*, *Gilles*, 281 F. App'x at 507 (noting that a

11

college's First Amendment access policy or practice "need not be reduced to writing").  Nor does it matter that defendant Tulier's full articulation of the College's "long-standing practice" was not sent to Hershey until after he was removed from the campus (a not uncommon result, of course, with any unwritten policy).  *See id.* at 510-11 (similarly relying, in defining "the open areas at Miami University" as a limited public forum on a motion to dismiss, on *ex-post* statements by university officials alleged in the complaint).[4]

Where, as here, plaintiff "ha[s] not attempted to refute [the campus officials'] characterization of university policy," *id.*, and makes no allegations of any inconsistent application of that policy[5], the forum inquiry is a simple one.  As alleged by Hershey himself, Lehman Campus is a limited public forum, reserved for "members of the College community."[6] It is on this basis -- and, as we next discuss, under this deferential constitutional standard -- that the Court must evaluate Hershey's First Amendment claims as to the restrictions on his leafleting inside the gates of Lehman College.

### 2.    Defendants' Alleged Restrictions on Hershey's Speech Are Constitutional

"In a limited public forum, the government may restrict speech in a way that is viewpoint-neutral and reasonable in light of the forum's established purpose."  *Ochshorn*, 645

---

[4] The Sixth Circuit in *Gilles* ultimately denied the campus officials' motion to dismiss, but only because it found that the university's unwritten speech policy -- which, as articulated in statements from university officials after plaintiff was denied access, allowed an outsider to speak on campus only if "invited to do so by the University or by a recognized student organization" -- was "devoid of standards" to guide the student groups' discretion and thus unconstitutionally vague.  *Id.* at *6-7, *12.  Here, Hershey raises no vagueness challenge.  And, of course, there is nothing vague about a policy and practice, as alleged here, that bars all outside leafleters and thus leaves nothing to discretion.

[5] Indeed, the only other outside leafleter mentioned in Hershey's Complaint was treated by the College exactly the same way he was.  (Cplt. ¶¶ 93-95 (noting that "another representative of Vegan Outreach named Eileen Botti was also prevented from leafleting on the outdoor walkways of the Lehman College campus").)

[6] Hershey's reference in the Complaint to "[t]he Lehman College/City University of New York Policies and Procedures § IV-D (Freedom of Speech)" (Cplt. ¶ 88) is of no help to his cause.  Nothing in those "Policies and Procedures" refers to speech by those, like Hershey, who are not "members of the Lehman community" -- and certainly nothing therein could be construed as supporting the argument that Lehman was "intentionally opened," *Ochshorn*, 645 F.3d at 540, to outside leafleting.  (Cplt. ¶ 88.)

12

F.3d at 540.  Reasonableness in this context "must be assessed in light of the purpose of the forum and all the surrounding circumstances."  *Hotel Emps.*, 311 F.3d at 554 (quoting *Cornelius*, 473 U.S. at 809) (internal quotation marks omitted).  Moreover, the restriction "need not be the most reasonable or the only reasonable limitation."  *Christian Legal Soc'y* v. *Martinez*, 130 S. Ct. 2971, 2992 (2010) (quoting *Cornelius*, 473 U.S. at 809) (internal quotation marks omitted).  In fact, "'[i]mplicit in the concept' of a limited public forum is the State's 'right to make distinctions in access on the basis of . . . speaker identity.'"  *Id.* at 2985 (quoting *Perry Educ. Ass'n* v. *Perry Local Educators' Ass'n*, 460 U.S. 37, 49 (1983)).  Thus, as the Supreme Court has held, "a speaker may be excluded" from a limited public forum "if he is not a member of the class of speakers for whose especial benefit the forum was created."  *Cornelius*, 473 U.S. at 806; *accord Christian Legal Soc'y*, 130 S. Ct. at 2985.

Here, Hershey does not allege that Lehman College's ban on outside leafleters is viewpoint-based; it applies equally to all who are not "members of the College community." (Cplt. ¶ 85.)  Nor, as noted, does Hershey even remotely suggest in the Complaint that the College has ever made any exception to this "long-standing practice."  (*Id.*; *see id.* ¶¶ 93-95.)

Moreover, Lehman College's policy here is plainly a reasonable one.  The Supreme Court has rejected the proposition "that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings."  *Widmar*, 454 U.S. at 268 n.5.  Instead, courts have considered a college campus "a 'special type of enclave' that is devoted to higher education."  *ACLU* v. *Mote*, 423 F.3d 438, 444 (4th Cir. 2005); *see also, e.g.*, *Bowman* v. *White*, 444 F.3d 967, 978 (8th Cir. 2006) ("[A] university's mission is education and the search for knowledge -- to serve as a "special type of enclave" devoted to higher education.").  Thus, consistent with the First Amendment, Lehman

may, as alleged, "preserv[e] its limited facilities and resources for its . . . students, its faculty, and

its employees." *Bloedorn*, 631 F.3d at 1235; *see also McGlone*, 2012 WL 523659, at *11

(noting that "public universities have limited resources and limited personnel, which they have

an interest in reserving for members of the university community").

Indeed, given the College's "significant interests in promoting the orderly conduct of

activities on campus, protecting the educational experience of the students, ensuring public

safety, [and] allowing for coordination of use of limited space by multiple entities," Lehman's

"long-standing practice" of restricting leafleting on its grounds to members of the Lehman

community is surely "reasonable in light of the university's educational mission." *McGlone*,

2012 WL 523659, at *11 (granting motion to dismiss); *see also, e.g.*, *Bloedorn*, 631 F.3d at

1234-35.  This is particularly so where, as here (*see infra* p. 17), the sidewalks immediately

outside the campus are available for Hershey's leafleting and other First Amendment activities.

*See, e.g.*, *Hotel Emps.*, 311 F.3d at 556 (holding that restriction on leafleting in Lincoln Center's

central fountain plaza, a limited public forum, was reasonable "where neighboring Damrosch and

Dante Parks, and the public sidewalks surrounding Lincoln Center, provide ample alternative

venues for groups such as the Union who wish to voice their views to Lincoln Center's

patrons").

In short, Hershey does not (and cannot) allege that he is "a member of the class of

speakers for whose especial benefit the forum was created" -- *i.e.*, a "member[] of the [Lehman]

College community" (Cplt. ¶ 85) -- so, under settled law, he may be constitutionally barred from

leafleting on the campus grounds.  *Cornelius*, 473 U.S. at 806.  As Judge Posner explained in a

similar case upholding a university's restrictions on campus speech by outside speakers:

> No matter how wonderfully suited the library lawn is to religious
> or other advocacy, Vincennes University could if it wanted bar

> access to the lawn to any outsider who wanted to use it for any
> purpose, just as it could bar outsiders from its classrooms, libraries,
> dining halls, and dormitories.  It wouldn't have to prove that
> allowing them in would disrupt its educational mission.

*Gilles* v. *Blanchard*, 477 F.3d 466, 470 (7th Cir. 2007).  For these same reasons, Lehman

College's alleged restrictions on the activities of outside leafleters, including Hershey, is wholly

reasonable and thus fully in accord with the requirements of the First Amendment.

### B.    Hershey Has Failed To State a First Amendment Claim as to His Leafleting Outside the Gates of Lehman College

Assuming that the streets, sidewalks, and driveways just outside the gates of Lehman

College are a "traditional public forum," defendants' restriction on Hershey's leafleting in that

forum was a reasonable, content-neutral time, place, or manner restriction.  *See, e.g.*, *Hotel*

*Emps.*, 311 F.3d at 545 ("The government may, however, impose content-neutral time, place and

manner restrictions on speech in a traditional public forum so long as those restrictions are

'narrowly tailored to serve a significant government interest, and leave open ample alternative

channels of communications.'")  Thus, this, too, provides no basis for a viable First Amendment

claim.

The video evidence is dispositive here.  While Hershey alleges that, once he exited the

Lehman campus gates, he "proceeded to peaceably hand out the booklets to interested student

passersby *on the sidewalk* at the intersection of Paul and Bedford Park," and limited his

leafleting to that "public New York City sidewalk," (Cplt. ¶¶ 28-35 (emphasis added)), the video

(which, as noted above, controls here, *supra* pp. 7-8) tells a different story.  Rather than

confining his leafleting to the "public sidewalk," Hershey repeatedly moved into and in front of

the active driveway "at the intersection of Paul and Bedford Park," which cars and other vehicles

use to enter the College.  (Ex. B-3.)  The defendant officers several times pointed Hershey to the

sidewalk itself, just a few feet away, and only when he refused to comply with these directives

did they arrest him for trespass.  (*Id.*)[7]  After his arrest -- when he finally restricted himself to the sidewalk and stopped crossing in front of the driveway -- Hershey distributed his leaflets "without further interference from the public safety officers."  (Ex. B-4; Cplt. ¶ 68.)

The officers' actions in this case, as revealed by the video, fully satisfy the requirements of the First Amendment.  As the Supreme Court has explained, a content-neutral time, place, or manner restriction "need not be the least restrictive or least intrusive means" of serving the government's legitimate interests.  *Ward* v. *Rock Against Racism*, 491 U.S. 781, 798 (1989). "Indeed, the narrow tailoring requirement 'is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Int'l Action Ctr.* v. *City of New York*, 587 F.3d 521, 527-28 (2d Cir. 2009) (quoting *Ward*, 491 U.S. at 799).

Here, defendants' obvious interests "in the orderly movement, flow of pedestrian [and vehicular] traffic, and public safety" are "substantial government interests justifying content-neutral restrictions on expressive activities."  *Zalaski* v. *City of Hartford*, 838 F. Supp. 2d 13, 44 (D. Conn. 2012); *see Madsen* v. *Women's Health Ctr.*, 512 U.S. 753, 768 (1994) (recognizing that the state "has a strong interest in ensuring the public safety and order, in promoting the free flow of traffic on public streets and sidewalks").  And the defendant officers' directive that Hershey not stop his leafleting but merely relocate it a few feet away and out of the path of the active Lehman College driveway is inarguably "narrowly tailored to serve the[se] significant interests."  *Zalaski*, 838 F. Supp. 2d at 44-45; *see also, e.g.*, *Marcavage* v. *City of Chicago*, 659 F.3d 626, 631 (7th Cir. 2011) ("[W]e cannot think of a narrower way of dealing with

---

[7] As "peace officers" under New York law, N.Y. Crim. Proc. Law § 2.10(79), the Lehman College public safety officers had authority to direct Hershey to leave the active driveway area and to arrest him without a warrant anywhere "within the geographical area of the city of New York," whether he was on college property or not. *Id.* § 2.20; N.Y. Educ. Law § 6206(16).

demonstrators blocking a pedestrian walkway than to request that they continue moving or change their location to a place very nearby.") The officers' directive also left open more than "ample alternative channels of communications" for Hershey -- *i.e.*, all of the remaining sidewalks surrounding Lehman College that are not in the path of an active driveway.  *See, e.g.*, *Int'l Action Ctr.*, 587 F.3d at 528 (noting that "the law does not require that alternative channels be 'perfect substitutes'"); *Marcavage*, 659 F.3d at 631 ("[T]he fact that the permissible locations were not plaintiffs' preferred venues does not render them inadequate.").

The district court's recent decision in *Zalaski* is instructive.  There, as in this case, an officer directed that plaintiffs, a group of animal rights' protestors, move from one location in a traditional public forum (a public park) to another spot "several feet away" so that they would not impede "the free flow of pedestrian traffic and public safety."  838 F. Supp. 2d at 26-29, 43-46.   When plaintiffs would not comply with the officer's directive, he ultimately arrested them.  *Id*.  Applying settled Supreme Court and Second Circuit precedent, the court found that that the officer's actions were a permissible time, place, or manner restriction and that plaintiffs had no viable First Amendment claim.  *Id.* at 43.  So too here.[8]

Accordingly, for all these reasons, Hershey has failed to state any claim under the First Amendment, and his requests for damages and injunctive relief on this basis should be dismissed in their entirety.

## POINT II
## HERSHEY HAS FAILED TO STATE A CLAIM FOR FALSE ARREST

As this Court has recently noted, § 1983 claims for false arrest under the Fourth Amendment and claims for false arrest and false imprisonment under New York law have the

---

[8] While *Zalaski* was resolved on a motion for summary judgment, the video evidence incorporated in Hershey's Complaint and available to the Court and the parties on this motion to dismiss makes the present case fully amenable to dismissal now, at the 12(b)(6) stage.

same elements. *Dotson* v. *Farrugia*, No. 11 Civ. 1126(PAE), 2012 WL 996997, at *7 (S.D.N.Y. Mar. 26, 2012); *see also id.* ("False arrest and false imprisonment are, under New York law, 'two names for the same tort.'"). To state such a cause of action, "a plaintiff must plausibly allege that: '(1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified.'" *Id.* at *3 (quoting *Richardson* v. *N.Y.C. Health & Hosps. Corp.*, No. 05-cv-6278, 2009 WL 804096, at *7 (S.D.N.Y. Mar. 25, 2009)).

The law is clear that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Id.* (quoting *Weyant* v. *Okst*, 101 F.3d 845, 852 (2d Cir. 1996)) (internal quotation marks omitted). Such probable cause exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (quoting *Jenkins* v. *City of New York*, 478 F.3d 76, 84 (2d Cir. 2007)) (internal quotation marks omitted).

Here, as the video evidence discussed above (pp. 15-17) demonstrates, the defendant officers had probable cause to arrest Hershey, as they did, for criminal trespass. N.Y. Penal Law § 140.05. Even in areas "which are at the time open to the public," *id.* § 140.00 -- which, as noted, we assume the driveway and sidewalks in front of Lehman College were for purposes of this motion to dismiss -- a trespass occurs when one "defies a lawful order not to enter or remain, personally communicated to him by . . . [an] authorized person." *Id.* §§ 140.00, 140.05. As the allegations in the Complaint and the incorporated video make plain, that is exactly what happened in this case: the officers told Hershey "that he was not allowed to leaflet" where he was on the driveway, repeatedly pointed him to the sidewalk just a few feet away, informed that

"if he did not leave" the driveway area "he would be arrested," and arrested him only when he refused to comply with these directives.  (Ex. B-3; Cplt. ¶¶ 30-40.)  That is more than enough probable cause to arrest for trespass.  *See also supra* note 7.

Indeed, New York law is clear that when a person refuses to comply with a reasonable, content-neutral time, place, or manner restriction while leafleting in a public forum, that constitutes the crime of trespass.  *See People* v. *Hedemann*, 107 Misc. 2d 241, 242-43 (Sup. Ct. App. Term 1st Dep't 1981) ("We conclude that defendant did not have an absolute constitutional right to remain and distribute literature at the precise area on Internal Revenue Service premises which he had selected; that he knowingly remained upon the premises after having been forbidden to do so by the person in lawful control of said premises; and that he is therefore subject to the sanction of the trespass statute."); *accord People* v. *Reape*, 22 Misc. 3d 615, 618 (N.Y.C. Crim. Ct. 2008).  That is precisely the situation here.

Accordingly, Hershey's claims for false arrest, just like his claims under the First Amendment, are wholly without merit.[9]

## POINT III

### HERSHEY HAS FAILED TO STATE A CLAIM FOR MALICIOUS PROSECUTION OR ABUSE OF PROCESS

Hershey's claims for malicious prosecution and abuse of process, under both § 1983 and New York law, also fail due to the existence of probable cause.  *See, e.g.*, *Rodriguez*, 2012 WL 234380, at *3 (noting that a malicious prosecution claim, under § 1983 or New York law, requires "that there was no probable cause for the proceeding"); *LaDoucier* v. *City of New York*, No. 10 Civ. 05089(RJH), 2011 WL 2206735, at *4 (S.D.N.Y. June 6, 2011) ("probable cause negates a claim for abuse of process" (internal quotation marks omitted)).  While "[t]he existence

---

[9] To the extent Hershey is alleging a Fourth Amendment claim based on the alleged search and seizure of his booklets and other property incident to his arrest (Cplt. ¶¶ 37-38, 41-42), that similarly fails.  *See, e.g.*, *Abdul-Rahman* v. *City of New York*, No. 10 Civ. 2778, 2012 WL 1077762, at *6 (E.D.N.Y. Mar. 30, 2012).

of probable cause at the time of the arrest may not be sufficient to provide probable cause for a prosecution," *Sforza* v. *City of New York*, No. 07 Civ. 6122(DLC), 2009 WL 857496, at *16 (S.D.N.Y. Mar. 31, 2009), to take advantage of this rule a "[p]laintiff . . . must allege 'some intervening fact' that revealed 'the groundless nature of the charge.'" *LaDoucier*, 2011 WL 2206735, at *4 n.8. Hershey does not even attempt to allege such facts here. His claims for malicious prosecution and false arrest should thus be dismissed as a matter of law and with prejudice.

In addition, Hershey's malicious prosecution claim, to the extent he brings one under § 1983, should also be dismissed because, though he must to sustain such a claim, he has not (and, under the alleged facts, cannot) allege that there was "a sufficient post-arraignment liberty restraint to implicate plaintiff's Fourth Amendment rights." *Rohman* v. *N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); *see Gordon* v. *City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *7 (E.D.N.Y. Mar. 29, 2012) (dismissing malicious prosecution claim where, as here, plaintiff "makes no allegation that he was arraigned" and bases his claim "only on pre-arraignment events"). Nor does Hershey make a single allegation of malice, which precludes both his federal and state malicious prosecution causes of action. *See Davis* v. *Mount Vernon Police Dep't*, No. 11 Civ. 2991, 2012 WL 1632794(ALC)(JCF), at *5 (S.D.N.Y. May 8, 2012) ("Malice requires showing 'a wrong or improper motive, something other than a desire to see the ends of justice served.'").

Hershey's claim for abuse of process is barred on an independent basis as well. Nowhere has Hershey alleged, as he must, that defendants "aimed to achieve a collateral purpose beyond

or in addition to his criminal prosecution." *Id.* (quoting *Savino* v. *City of New York*, 331 F.3d 63, 70 (2d Cir. 2003)) (internal quotation marks omitted); *see also Dotson*, 2012 WL 996997, at *8.[10]

<u>POINT IV</u>

<u>HERSHEY HAS FAILED TO STATE A CLAIM FOR</u>
<u>EXCESSIVE FORCE OR ASSAULT AND BATTERY</u>

Hershey's § 1983 claim for use of excessive force and New York state law claim for assault and battery "are substantially identical." *Dotson*, 2012 WL 996997, at *7 (quoting *Humphrey* v. *Landers*, 344 F. App'x 686, 688 (2d Cir. 2009)) (internal quotation marks omitted). To plead either one, Hershey must plausibly allege that defendants' application of force was "objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id.* at *4 (quoting *Maxwell* v. *City of New York*, 380 F.3d 106, 108 (2d Cir. 2004)). He does not do so here.

Hershey apparently bases his claims for excessive force and assault and battery on the allegations that, subsequent to his arrest, "one of either defendant Freytes or Irizariz" handcuffed him, and that the handcuffs were "excessively tight." (Cplt. ¶ 70; *see id.* ¶¶ 39-40, 43-45, 50-52, 56-62, 70-72.) While "it is true that excessively tight handcuffing may constitute use of excessive force," *Dotson*, 2012 WL 996997, at *5, "[t]here is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Lynch ex rel. Lynch* v. *City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (citing cases); *see also, e.g.*, *Sullivan* v. *City of New York*, No. 10 Civ. 0038(NRB), 2011 WL 3806006, at *4 (S.D.N.Y. Aug. 29, 2011) ("A line of cases have held that minor injuries that result from handcuffs, such as temporary swelling, inflammation or soreness of an arrestee's wrists, are insufficient on their own to sustain a Fourth Amendment excessive

---

[10] Hershey's state law claims for both malicious prosecution and abuse of process should also be dismissed because he has failed to allege special damages -- or, indeed, any specified amount of damages at all. *See, e.g.*, *TADCO Constr. Corp.* v. *Dormitory Auth.*, 700 F. Supp. 2d 253, 273-74 (E.D.N.Y. 2010).

force claim."). Hershey's allegations of "red marks on his wrists" after the handcuffs were removed and temporary "paresthesia in his hands" for "three weeks thereafter" do not satisfy that requirement. *See, e.g.*, *Sullivan*, 2011 WL 3806006, at *4 ("use of restraints in such a way as to cause *permanent injury or scarring* may support an excessive force claim" (emphasis added)).[11]

## POINT V
## HERSHEY'S REMAINING CLAIMS ALSO FAIL

Hershey's remaining claims, for negligence and state constitutional tort, also fail as a matter of law. As this Court recently noted, "New York does not, as a matter of public policy, recognize a claim for negligence arising out of an arrest or prosecution." *Dotson*, 2012 WL 996997, at *10 (internal quotation marks omitted). On this basis alone, Hershey's negligence claim should be dismissed. And Hershey's alleged tort claim under the New York State Constitution -- which, like the claim this Court dismissed in *Dotson*, "consists only of the conclusory assertion that defendants, 'acting under color of law, violated Plaintiff's rights pursuant to Article I, §§ 6, 8, . . . and 12 of the New York State Constitution'" -- not only does not allege the necessary specific facts to state a cause of action, but "to the extent the Court can attempt to map plaintiff's allegations in the Complaint onto the sections [of the state constitution] cited," this claim is merely duplicative of Hershey's other claims against defendants, and thus should be dismissed for the very same reasons. *Id.*[12]

---

[11] Moreover, Hershey's allegation that paresthesia resulting from his handcuffing "caused [him] to drop his booklets that he was attempting to hand out" afterwards (Cplt. ¶ 70) finds no support in the video evidence. At no point in the video of his post-arrest leafleting does Hershey appear to drop anything at all. (Ex. B-4.)

[12] While "it is true that the New York State Constitution 'generally affords greater protection than the United States Constitution with regard to speech,'" *id.* at *8, that makes no difference here. As the New York Court of Appeals has held, "public forum analysis under article I, § 8 of the State Constitution mirrors [the] federal standard." *People* v. *Barton*, 8 N.Y.3d 70, 76 (2006); *see also People for the Ethical Treatment of Animals* v. *Giuliani*, 105 F. Supp. 2d 294, 336 (S.D.N.Y. 2000) ("New York state courts apply a forum analysis, along with the concomitant standards, similar to the doctrine formulated by the Supreme Court to govern First Amendment cases."), *aff'd*, 15 F. App'x 35 (2d Cir. 2001).

## POINT VI

### HERSHEY'S CLAIMS AGAINST SEVERAL OF THE DEFENDANTS
### FAIL FOR LACK OF THE REQUISTE PERSONAL INVOLVEMENT

In any event, Hershey's claims, both federal and state, against several of the defendants should be dismissed for failure to allege the requisite personal involvement. *See, e.g.*, *Dotson*, 2012 WL 996997, at *6 ("In the Second Circuit, in order to support liability under § 1983, a defendant must be personally involved in alleged constitutional deprivations."); *Morgan* v. *Cnty. of Nassau*, 720 F. Supp. 2d 229, 235 (E.D.N.Y. 2010).

In *Colon* v. *Coughlin*, 53 F.3d 865, 873 (2d Cir. 1995), the Second Circuit set forth a five-factor test for determining personal involvement under § 1983. The continuing validity of all five *Colon* factors remains in some doubt after the Supreme Court's decision in *Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009). *See Reynolds* v. *Barrett*, --- F.3d ----, 2012 WL 2819351, at *8 n.14 (2d Cir. July 11, 2012) (noting this conflict but declining to resolve the issue); *see also, e.g.*, *Spear* v. *Hugles*, No. 08 Civ. 4026(SAS), 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009) ("[O]nly the first and third *Colon* factors have survived the Supreme Court's decision in *Iqbal*."). But no matter how many *Colon* factors remain, there has never been any doubt that "the mere fact that a defendant possesses supervisory authority" or "conclusory claim[s]" of personal involvement are insufficient to establish liability under § 1983. *Green* v. *Niles*, No. 11 Civ. 1349(PAE), 2012 WL 987473, at *3 (S.D.N.Y. Mar. 23, 2012).

With respect to, at the very least, defendants Goldstein, Fernandez, Laperuta, Tulier, and the unnamed Doe and Roe defendants (as to each of Hershey's claims) and defendant Zucchetto (as to all but the First Amendment claim), however, Hershey makes no specific factual allegations of their involvement. (*See* Cplt. ¶ 6 (Goldstein); *id.* ¶¶ 7, 12, 82-83 (Fernandez); *id.* ¶¶ 8, 12, 77-78 (Laperuta); *id.* ¶¶ 10, 85, 87 (Tulier); *id.* ¶ 11 (Does); *id.* ¶ 12 (Roes); *id.* ¶¶ 9, 12, 19-24, 27, 71, 79, 95 (Zucchetto).) As this Court has recently emphasized, "merely recit[ing] the

legal elements of a successful § 1983 claim," as Hershey does here, "does not meet the plausibility pleading standard." *Dotson*, 2012 WL 996997, at *6. Thus, on this basis as well, Hershey's claims against these defendants should be dismissed with prejudice.

## POINT VII
## HERSHEY'S CLAIMS ARE ALSO BARRED ON QUALIFIED IMMUNITY GROUNDS

Even if the Court were to find that Hershey has adequately alleged any of his claims, dismissal would still be warranted here on qualified immunity grounds.

Qualified immunity under federal law -- which, as this Court has noted, ought to be decided "at the earliest possible opportunity," *Diggs* v. *Marikah*, No. 11 Civ. 6382(PAE), 2012 WL 934523, at *5 (S.D.N.Y. Mar. 20, 2012) -- "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle* v. *Howards*, 132 S. Ct. 2088, 2093 (2012). Similarly, "New York law . . . grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis." *Jones* v. *Parmley*, 465 F.3d 46, 63 (2d Cir. 2006).[13] Under either standard, the defendant's entitlement to qualified immunity "depends on the reasonableness of his actions." *5 Borough Pawn, LLC* v. *City of New York*, 640 F. Supp. 2d 268, 286 (S.D.N.Y. 2009); *see Reichle*, 132 S. Ct. at 2093 ("To be clearly established, a right must be sufficiently clear 'that every "reasonable official would [have understood] that what he is doing violates that right."'").

For the same reasons that he has failed to state any of his claims, Hershey has certainly failed to allege that the defendants' actions here were "objectively unreasonable" under existing precedent. *E.g.*, *Rosendale* v. *Mahoney*, 369 F. App'x 313, 315 (2d Cir. 2010); *see Reichle*, 132

---

[13] The immunity offered under New York state law, in fact, "affords public officials considerably greater protection" than does the federal standard. *Hirschfeld* v. *Spanakos*, 909 F. Supp. 174, 180 (S.D.N.Y. 1995).

S. Ct. at 2093.  This is true for his First Amendment claims.  *See, e.g.*, *Israel* v. *Abate*, 949 F.

Supp. 1035, 1044 (S.D.N.Y. 1996) (finding qualified immunity where "[p]laintiffs fail to cite

any decision recognizing . . . that the interior of a correctional facility, let alone a security check

point, is a public forum"); *Zalaski*, 838 F. Supp. 2d at 46 ("Assuming arguendo that Defendant

Albert's directive was not a permissible content-neutral time, place, manner restriction, Albert

would be entitled to qualified immunity.").  It is also true for his claims for false arrest, malicious

prosecution, and abuse of process claims.  *See, e.g.*, *Lawrence* v. *City Cadillac*, No. 10 Civ.

3324(PKC), 2010 WL 5174209, at *8 (S.D.N.Y. Dec. 9, 2010) ("[E]ven if actual probable cause

to arrest or charge the plaintiff does not exist, an arresting officer is entitled to qualified

immunity if 'arguable probable cause' exists.").  And it is true for Hershey's excessive force and

assault and battery claims as well.  *See, e.g.*, *Sanchez* v. *Port Auth.*, No. 08-CV-1028, 2012 WL

1068078, at *11 (E.D.N.Y. Mar. 29, 2012) ("[Q]ualified immunity is specifically designed to

protect officers from the sometimes 'hazy border between excessive and acceptable force.'").

## CONCLUSION

For the foregoing reasons, Hershey's Complaint should be dismissed with prejudice.

Dated:  New York, New York
        August 6, 2012

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for Defendants*

By:
/s/ *William J. Taylor, Jr.*
William J. Taylor, Jr.
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

Reproduced on Recycled Paper